IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOSLYN CARNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-947-SMD |
| ) | |
| KILOLO KIJAKAZI, ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

# **OPINION & ORDER**

On September 20, 2018, Plaintiff Joslyn "Jared" Carney ("Carney") filed for a period of disability and disability insurance benefits ("DIB") alleging he became unable to work beginning August 1, 2018. Carney's application was denied at the initial administrative level. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Carney was not disabled. Carney appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council"), which denied review. Consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Carney now appeals that decision under 42 U.S.C. § 405(g). For the reasons that follow, the undersigned REVERSES and REMANDS the Commissioner's decision.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 9); Def.'s Consent (Doc. 10).

**I.      STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ

---

[2] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). A court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*,

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Carney was eighteen years old on his alleged onset date. Tr. 94. He completed eleventh grade and has no previous work experience. Tr. 248-49. Carney alleged disability due to posttraumatic stress disorder, obsessive compulsive disorder, and major depressive disorder. Tr. 248.

In the administrative proceedings, the ALJ made the following findings with respect to the five-step evaluation process for Carney's disability determination. At step one, the ALJ found that Carney has not engaged in substantial gainful activity since September 20, 2018. Tr. 13. At step two, the ALJ found that Carney suffers from the following severe impairments: "depressive disorder, obsessive-compulsive disorder (OCD), posttraumatic stress disorder (PTSD), and personality disorder (with borderline personality traits)." Tr. 13. At step three, the ALJ found that Carney "does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 13.

The ALJ proceeded to determine Carney's RFC, articulating it as follows:

> [Carney] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: routine, repetitive tasks; only occasional judgment, decision-making, and workplace changes; only occasional interaction with the public, coworkers, and supervisors. [Carney] is able to maintain concentration, persistence, and pace for extended periods on simple job tasks but not complex job tasks.

Tr. 14-15. At step four, the ALJ found that Carney has no past relevant work. Tr. 18. At step five, the ALJ utilized the testimony of a VE and determined that "considering [Carney's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Carney] can perform." Tr. 19. Those jobs include "night cleaner"; "garment sorter"; and "laundry folder." Tr. 19. Accordingly, the ALJ concluded that Carney was not under a disability since the date his application was filed. Tr. 19.

## IV. CARNEY'S ARGUMENTS

Carney argues that the Commissioner's decision should be reversed for two reasons. First, Carney contends that the Appeals Council erred by denying review of his case despite new and material evidence that he submitted after the ALJ rendered a decision denying him benefits. Pl.'s Br. (Doc. 16) pp. 7-11. Second, Carney argues that his RFC is inconsistent with the ALJ's acceptance of a physician's opinion that was deemed persuasive, rendering either his RFC and/or the ALJ's evaluation of the physician's opinion unsupported by substantial evidence. *Id.* at 11-15. Because the undersigned finds that the

5

Appeals Council committed legal error in denying review of Carney's application based on his new evidence, the case is due to be reversed and remanded. As remand is warranted on Carney's first argument, the undersigned declines to address his second.

## V. APPLICABLE LAW

With a few exceptions, a claimant is allowed to present additional evidence related to his disability at each stage of the Social Security administrative process. *See* 20 C.F.R. § 404.900(b). If a claimant presents additional evidence to the Appeals Council after an ALJ has rendered an unfavorable decision regarding disability, the Appeals Council must consider the additional evidence if it "is new, material, and relates to the period on or before the date of the hearing decision." 20 C.F.R. § 404.970(a)(5); *Hunter v. Soc. Sec. Admin, Comm'r*, 705 F. App'x 936, 939 (11th Cir. 2017). Evidence is new when it is noncumulative of the evidence before the ALJ. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821 (11th Cir. 2015). Evidence is material if there is a reasonable probability that it would change the administrative results. *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). And evidence is chronologically relevant when "it relates to the period on or before the date of the [ALJ's] hearing decision." *McCullars v. Comm'r Soc. Sec. Admin.*, 825 F. App'x 685, 692 (11th Cir. 2020) (per curiam) (quoting 20 C.F.R. § 416.1470).

"[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). The Appeals Council's decision is subject to judicial review under sentence four of section 405(g)). *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d

1253, 1265 (11th Cir. 2007). Pursuant to a sentence four remand, a reviewing court must determine if the new, material, and chronologically relevant evidence submitted "renders the denial of benefits erroneous." *Id.* at 1262. For a court to find the denial of benefits erroneous, the plaintiff must show that "in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence[.]" *Timmons v. Comm'r of Soc. Sec.*, 552 F. App'x 897, 902 (11th Cir. 2013) (citing *Ingram*, 496 F.3d at 1266-67). On the other hand, if the "additional evidence [is] either cumulative of the evidence before the ALJ or [is] not chronologically relevant, and none of it undermine[s] the substantial evidence supporting the ALJ's decision," the Commissioner's decision is due to be affirmed. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014).

## VI.   ANALYSIS

On August 28, 2020, while Carney's appeal was pending before the Appeals Council, he submitted additional evidence. Tr. 52-70. Carney's evidence includes: (1) treatment notes from East Alabama Medical Center ("EAMC"); (2) a mental impairment questionnaire from Dr. Robert Storjohann, a consultative psychologist; and (3) a psychological evaluation from Dr. Storjohann. Tr. 52-70. The EAMC treatment notes reflect that Carney's physician changed his diagnosis to "bipolar 2." Tr. 54. In the questionnaire and psychological evaluation, Dr. Storjohann opined that Carney has marked deficits in multiple areas of mental functioning, and that Carney's prognosis for the coming six to twelve months "is considered to be extremely poor due to the chronicity and severity

of his psychiatric difficulties." Tr. 70. All of this evidence was generated in June 2020, approximately one month after the ALJ's decision. Tr. 20, 52-70.

The Appeals Council concluded that Carney's additional evidence did not relate to the period at issue and therefore denied review of his application. Tr. 2. The Appeals Council reasoned that because the evidence postdated the ALJ's decision, it "does not affect the decision about whether [Carney was] disabled." Tr. 2. Clearly, the evidence from Dr. Storjohann and EAMC occurred after the ALJ's decision. However, evidence generated after an ALJ's decision is not automatically precluded from relating to the period at issue. *See, e.g.*, *Washington*, 806 F.3d at 1322 (11th Cir. 2015) (finding that the plaintiff's evidence submitted to the Appeals Council was "chronologically relevant even though [the physician] examined him several months after the ALJ's decision"); *Chiress v. Comm's of Soc. Sec.*, 2010 WL 2612321, at *7 (M.D. Fla. June 7, 2010) (finding that December 2008 evidence related back to the plaintiff's conditions even though the evidence postdated the ALJ's February 2008 decision). Indeed, "[m]edical examinations conducted after an ALJ's decision may still be chronologically relevant if they relate back to a time on or before the ALJ's decision." *Hunter*, 705 F. App'x at 940 (citing *Washington*, 806 F.3d at 1322-23). Similarly, a psychologist's opinion postdating an ALJ's decision may be chronologically relevant where "(1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental-health treatment records from that period, and (3) there was no evidence

of the claimant's mental decline since the ALJ's decision." *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1072 (11th Cir. 2019).

The undersigned finds that the Appeals Council erred in finding that the EAMC treatment notes were not chronologically relevant. The notes indicate that, in February 2020, Carney's Zoloft prescription was increased. Tr. 54. After the medication increase, Carney did not attend therapy regularly because of the COVID pandemic. Tr. 54. When he returned in June 2020, Carney described "upswings characterized by incr[eased] energy, talkativeness, interest in hobbies, [and] impulsive spending[.]" Tr. 54. Carney stated that his upswings, identified as hypomanias, occurred almost weekly, lasted 1-2 days, and occurred 4-5 times per month. Tr. 54. Based on this information, Carney's physician concluded that it was "not surprising that Zoloft hasn't helped much with [his] depression/ocd." Tr. 54. As a result, Carney's physician changed his diagnosis to bipolar 2 disorder. Tr. 54.

The above timeline suggests that Carney experienced hypomanias prior to June 2020 and post February 2020.[5] Of course, any hypomanias experienced prior to the ALJ's May 2020 decision relate to the period at issue. Importantly, there is no indication that Carney's condition deteriorated after the ALJ's decision, resulting in the bipolar 2 diagnosis. Instead, it appears that Carney's physician misdiagnosed him originally, and that the misdiagnosis was discovered after the Zoloft increase. But even if one could conclude

---

[5] In reviewing Carney's medical records, it does not appear that Carney reported previous hypomanias prior to the February 2020 EAMC visit. As such, it is reasonable to infer that the hypomanias began after February 2020.

9

that Carney's bipolar 2 diagnosis was the result of mental decline, such deterioration occurred around February 2020—prior to the ALJ's decision. Therefore, the undersigned concludes that the EAMC treatment notes are chronologically relevant because they describe Carney's mental symptoms between February 2020 and June 2020, a portion of which is prior to the ALJ's decision.

Similarly, the undersigned finds that the Appeals Council erred in finding that Dr. Storjohann's mental impairment questionnaire and evaluation were not chronologically relevant. First, Dr. Storjohann examined Carney and, based on his descriptions of his mental symptoms, found that Carney had marked limitations in mental functioning. Importantly, Dr. Storjohann noted that Carney's symptoms and limitations occurred, at the earliest, when he was fifteen years old. Because Carney was eighteen years old on his application date, it is clear that Carney described his mental symptoms as they occurred during the relevant period.[6] Second, in the questionnaire, Dr. Storjohann indicates that he reviewed Carney's medical records, which relate to the relevant period, in order to reach his conclusion that Carney had marked mental impairments. And, third, as noted above, there is no evidence that Carney experienced a mental decline after the ALJ's decision. Therefore, the undersigned concludes that Dr. Storjohann's examination and questionnaire relate to the relevant period and therefore are chronologically relevant.

In addition to being chronologically relevant, the undersigned also finds that

---

[6] In contrast, had Dr. Storjohann concluded that Carney's limitations occurred at the earliest when he was twenty-one, it could be reasonable to conclude that Carney was not describing his limitations during the relevant period.

Carney's additional evidence is new and "material because, if accepted, there is a reasonable possibility that [the evidence] would change the administrative result." *Hunter*, 705 F. App'x at 941 (internal quotation marks omitted). As for the EAMC treatment notes, the undersigned finds that the change in Carney's diagnosis to bipolar 2 and resulting hypomanic episodes could change the outcome of Carney's disability determination. Bipolar 2 disorder is characterized by hypomanic episodes and major depressive episodes. *Mayo Clinic: Bipolar disorder*, https://www.mayoclinic.org/diseases-conditions/bipolar-disorder/symptoms-causes/syc-20355955 (last visited Aug. 3, 2022). "These mood swings can affect sleep, energy, activity, judgment, behavior and the ability to think clearly." *Id.* Of course, a diagnosis alone does not establish disability. *Moore v. Barnhart*, 405 F.3d 1208 1213 n.6 (11th Cir. 2005). However, the ALJ does not discuss mood fluctuations in the opinion. Instead, the discussion is limited to Carney's depressive episodes. *See* Tr. 14 ("Outpatient mental health treatment notes show medication management and therapy to address depression and anxiety[.]"); Tr. 15 ("[T]he claimant reported anxiety that limits social interaction, forgetfulness, sleep disturbance, obsessive cleaning, and difficulty focusing or finishing even simple tasks."); *see generally* Tr. 15-118. Because Carney experienced hypomanic episodes during the relevant period that the ALJ does not discuss, the undersigned cannot conclude that the EAMC treatment notes would not change the ALJ's disability determination. As such, the EAMC treatment notes are material.

As for Dr. Storjohann's questionnaire and evaluation, the undersigned similarly finds that the evidence could change the outcome of Carney's disability determination. In

his questionnaire, Dr. Storjohann opined that Carney was significantly more limited than his RFC reflects. For example, in Carney's RFC, the ALJ found that Carney could "maintain concentration, persistence, and pace for extended periods" of time. Tr. 15. In contrast, Dr. Storjohann opined that Carney could only occasionally "maintain attention and concentration for extended periods (2 hours)." Tr. 63. Further, Dr. Storjohann opined that Carney had "marked deficits in his ability to adapt to changes in a work setting." Tr. 70. But the ALJ concluded that Carney could occasionally adapt to workplace changes. Tr. 14. Additionally, the ALJ does not address absenteeism in Carney's RFC. Tr. 14-15. However, Dr. Storjohann opined that Carney would be absent more than four days each month due to his mental impairments. Tr. 64. Were Dr. Storjohann's opinion deemed persuasive by the ALJ, the opinion could change Carney's RFC and thereby his disability status. As such, the questionnaire and evaluation are material.

      Because the EAMC treatment notes and Dr. Storjohann's evaluation and questionnaire are new, material, and chronologically relevant, the Appeals Council was required to consider them, and its refusal to do so was an error of law. As such, the case should be remanded for consideration of Carney's evidence with all the other evidence in the record.

## V. CONCLUSION

For the reasons explained above, the undersigned finds that the Commissioner's erred. Therefore, the decision is REVERSED and REMANDED.

A separate judgment will issue.

DONE this 22nd day of August, 2022.

                                                  Stephen M. Doyle
                                                  CHIEF U.S. MAGISTRATE JUDGE